IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | INFORMATION |
| | : | |
| v. | : | CRIMINAL NO. 5:25-CR-_____ |
| | : | |
| ALAN CHILDS | : | VIOLATIONS: |
| | : | 18 U.S.C. § 1349 |
| | : | 18 U.S.C. § 1344 |
| | : | |

**THE UNITED STATES CHARGES:**

### GENERAL INTRODUCTION

At all times relevant and material to this Information:

1. Morris Bank was a financial institution as defined by Title 18, United States Code, Section 20, the deposits of which were insured by the Federal Deposit Insurance Corporation. Morris Bank has locations throughout the state of Georgia, including branches in the Middle District of Georgia.

2. **ALAN CHILDS** was the Market President for the Gray, Georgia branch of Morris Bank. As Market President, he had lending authority up to $500,000.00 per customer "relationship." A "relationship" included all loans that could be associated with a particular customer. In order to lend money beyond $500,000.00 for a relationship, **ALAN CHILDS** was required to obtain approval from the Senior Credit Officer for Morris Bank.

3. Factors to consider in approving any loan for Morris Bank included the borrower's ability to repay the loan, their financial condition, the loan purpose, and collateral.

4. When loans were approved, Morris Bank would issue a loan check. These loan checks were issued at the direction of the Loan Officer, such as **ALAN CHILDS**. If the loan was for the purchase of an item, that loan check would typically be made out to the seller of that item.

5. R.A. owned and operated R.A. Logging, LLC, which was a timber harvesting business.

6. T.A. was R.A.'S wife.

## COUNT ONE
### (Conspiracy to Commit Bank Fraud)

The allegations contained in paragraphs 1 through 6 of the General Introduction of this Information are incorporated by reference as if set forth fully herein.

Beginning on or about March 1, 2018, and continuing until on or about August 30, 2022, in the Macon Division of the Middle District of Georgia, and elsewhere within the jurisdiction of the court,

**ALAN CHILDS**,

did conspire with R.A. and T.A., and with others both known and unknown to the Acting United States Attorney, to commit an offense against the United States, that is, to knowingly devise, execute, and attempt to execute a scheme and artifice to defraud and to obtain money, funds, credits, assets, and securities owned by and under the custody and control of Morris Bank by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

### MANNER AND MEANS OF THE CONSPIRACY

The manner and means whereby the conspiracy was sought to be accomplished were as follows:

1. In or around March 2018, R.A. obtained his first loan from Morris Bank to purchase equipment. This loan, and all subsequent loans associated with R.A., were handled by **ALAN CHILDS** with closing at the Gray, Georgia branch of Morris Bank.

2. In or around June 2019, R.A.'s relationship had reached the maximum $500,000.00 threshold that **ALAN CHILDS** was allowed to lend to.

3. Also, in or around June 2019, R.A.'s loans with Morris Bank were downgraded to substandard, which means they displayed a well-defined weakness or weaknesses that could jeopardize collection. These loans required close attention to avoid deterioration and potential loss. Morris Bank policy provided that renewals, modifications, or extensions of loans for relationships above $50,000.00 and graded substandard or worse required approval by the Credit Administration Officer or a member of the credit team.

4. Beginning in August 2019, and continuing through May 2022, R.A. began having relatives and friends appear as borrowers for loans intended for R.A.'s benefit. **ALAN CHILDS** knew that these loans in the other individuals' names were actually for R.A. **ALAN CHILDS** thus let R.A. exceed his $500,000.00 lending limit without the proper approvals by making it appear these loans belonged to a different relationship. **ALAN CHILDS** also did not seek the required approval for R.A.'s loans that were graded substandard.

5. R.A. provided the information for the loan applications in these straw borrower's names. This included false reported annual incomes for the straw borrowers. **ALAN CHILDS** did not verify these incomes.

6. On March 23, 2021, the Credit Administrative Officer at Morris Bank emailed **ALAN CHILDS** to inquire about whether the R.A. relationship was over $500,000.00 and would require an approval form.

7. On March 25, 2021, the Credit Administrative Officer at Morris Bank emailed **ALAN CHILDS** about the loans she found that were tied to R.A.'s relationship. The loans she had identified totaled $1,620,120.03. The list she calculated did not include all of the loans that were actually related to R.A.'s relationship.

3

8. According to the Credit Administrative Officer, **ALAN CHILDS** told her that the loans were not all related because they had their own repayment sources and should therefore not be considered the same relationship.

9. Despite R.A.'s loans being delinquent on payment, on or about June 18, 2021, **ALAN CHILDS** approved a $171,589.00 loan to D.R. to purchase a 2018 535 D Cat Skidder. The bill of sale included in this loan application showed that the person buying the Skidder was actually R.A. This Skidder was never sold by the alleged seller.

10. In or around December 2021, officials at Morris Bank state they became aware that several loans in R.A.'s and his relatives' names were related and that they had surpassed **ALAN CHILD'S** lending limit. The loans also continued to suffer delinquency issues.

11. **ALAN CHILDS** continued to approve loans to R.A. through straw borrowers. Had **ALAN CHILDS** sought the approval for these loans under R.A.'s relationship, the request would have been denied given the delinquency issues.

12. For example, on or about January 13, 2022, **ALAN CHILDS** approved two loans in the name of R.M., one for $114,000.00 and one for $297,500.00. Both of these loans were actually for R.A.'s benefit.

13. Also, on May 24, 2022, **ALAN CHILDS** approved a $131,595.00 loan for A.M., which was actually for R.A.'s benefit.

14. On June 10, 2022, **ALAN CHILDS** approved a $285,000.00 loan for A.M., which was actually for R.A.'s benefit.

15. As a result of the conspiracy, Morris Bank issued a total of 57 loans to and for the benefit of R.A., totaling over $3,000,000.00.

All in violation of Title 18, United States Code, Section 1349.

C. SHANELLE BOOKER
ACTING UNITED STATES ATTORNEY

By: _____
ELIZABETH S. HOWARD
ASSISTANT UNITED STATES ATTORNEY