IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CASE NO. 5:25-CR-13 (MTT) |
| | : |
| ALAN CHILDS, | : |
| | : |
| Defendant. | : |

## PLEA AGREEMENT

The Acting United States Attorney for the Middle District of Georgia ("United States") and Defendant Alan Childs enter into this plea agreement, agreeing as follows:

(1)

Defendant acknowledges that Defendant has reviewed and discussed the Information against Defendant in this matter with Defendant's attorney and Defendant's attorney has explained to Defendant his/her understanding of the United States' evidence.

(2)

Defendant understands that Defendant is not required to plead guilty, and that Defendant has the right to plead not guilty and to elect instead to be tried by a jury. Defendant understands that at a jury trial Defendant would enjoy a presumption of innocence, and that the United States would have the burden of proving Defendant's guilt beyond a reasonable doubt. Defendant understands that Defendant would be entitled to the services of an attorney at all stages of such a trial. Defendant understands that Defendant would be entitled to confront and to cross-examine the United States' witnesses, and to present witnesses and evidence in Defendant's own behalf. Defendant understands that Defendant would have the right to testify in Defendant's own behalf,

1

but that Defendant could not be compelled to do so. Defendant has discussed these rights with Defendant's attorney. Defendant knowingly and voluntarily waives Defendant's right to plead not guilty and to proceed to trial.

(3)

Being fully cognizant of Defendant's rights, and in exchange for the considerations to be made by the United States as set forth in Paragraph (4) below, Defendant agrees pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A), as follows:

(A)   Defendant is guilty and will knowingly and voluntarily enter a plea of guilty to Count One of the Information which charges Defendant with Conspiracy to Commit Bank Fraud in violation of Title 18, United States Code, Section 1349 in connection with Title 18, United States Code, Section 1344.

(B)   Defendant fully understands that Defendant's plea of guilty as set forth in Subparagraph (A), above, will subject Defendant to the following penalties on Count One:

- a maximum sentence of thirty (30) years imprisonment;
- a maximum fine of $1,000,000.00, or both; and
- a term of supervised release of five (5) years.

Defendant further acknowledges that the Court is required to impose a mandatory assessment of $100.00 per count.

(C)   Defendant acknowledges and understands that the Court is not bound by any estimate of the probable sentencing range that Defendant may have received from Defendant's attorney, the United States, or the Probation Office. Defendant further acknowledges and agrees that Defendant will not be allowed to withdraw Defendant's plea on the ground that Defendant received an estimated guideline range from the United States, Defendant's attorney, or the

2

Probation Office which is different from the guideline range computed by the Probation Office in the Presentence Investigation Report or different from the guideline range found by the Court to be the correct guideline range.

(D) Defendant understands fully and has discussed with Defendant's attorney that the Court will not be able to determine the appropriate guideline sentence until after a Presentence Investigation Report has been completed. Defendant understands and has discussed with Defendant's attorney that Defendant will have the opportunity to review the Presentence Investigation Report and to object to and challenge any facts reported therein. Defendant understands and has discussed with Defendant's attorney that any objections or challenges by Defendant or Defendant's attorney to the facts or recommendations presented in the Presentence Investigation Report or any disagreement with the Court's rulings on such objections or challenges will not be grounds for withdrawing the plea of guilty. Nothing in this agreement precludes the United States from providing full and accurate information to the Court and the Probation Office for use in calculating the advisory guideline range applicable to Defendant.

(E) Defendant understands and has discussed with Defendant's attorney that after the Court determines the advisory guideline range applicable to Defendant, the Court has the discretion and authority to impose a sentence that is more severe or less severe than the sentence recommended by the guidelines.

(F) Although 18 U.S.C. § 3742 authorizes defendants to appeal their sentences under certain circumstances, Defendant knowingly and voluntarily waives any right to appeal Defendant's sentence, including the amount of any restitution imposed as part of Defendant's sentence. Defendant's sentence appeal waiver does not apply if: (1) the Court imposes a sentence that exceeds the advisory guideline range as that range has been calculated by the Court at the time

3

of sentencing; (2) the Court imposes a sentence that exceeds the statutory maximum; or (3) the United States appeals Defendant's sentence under the authority of 18 U.S.C. § 3742(b). Nothing in this agreement shall deprive the United States of its right to appeal Defendant's sentence, as authorized by 18 U.S.C. § 3742(b). If, however, the United States appeals Defendant's sentence pursuant to this statute, Defendant is released from Defendant's waiver of Defendant's right to appeal altogether.

Defendant waives any right to collaterally attack Defendant's conviction and sentence under 28 U.S.C. § 2255, or to bring any other collateral attack, except that Defendant shall retain the right to bring a claim of ineffective assistance of counsel. This provision shall not bar the filing of a petition for writ of habeas corpus, as permitted by 28 U.S.C. § 2241.

Defendant understands and acknowledges that the waivers outlined herein may result in the dismissal of any appeal or collateral attack Defendant might file challenging Defendant's conviction or sentence. If Defendant files a notice of appeal or collateral attack, notwithstanding this agreement, Defendant agrees that this case shall, upon motion of the United States, be remanded to the Court to determine whether Defendant is in breach of this agreement and, if so, to permit the United States to withdraw from the plea agreement.

(G)  Defendant agrees to provide complete, candid, and truthful statements to law enforcement officers regarding Defendant's involvement and the involvement of all others involved in the charges alleged in the present Information as well as any and all criminal violations about which Defendant has knowledge or information and that such information provided will be pursuant to and covered by this agreement. Defendant further agrees to provide complete, candid, and truthful testimony regarding such matters in any proceeding. Defendant understands that this agreement does not require Defendant to implicate any particular individual or individuals or to

4

"make a case." Rather, this agreement requires Defendant to be truthful and to testify truthfully whenever called upon.

(H)     Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 ordinarily limit the admissibility of statements made by a defendant during the course of plea discussions or plea proceedings. Defendant knowingly and voluntarily waives the protections of these rules by entering into this plea agreement.  If, after entering into this plea agreement, Defendant fails to plead guilty, or the plea of guilty is later withdrawn, Defendant's statements in connection with this plea, including the stipulation of fact set forth below in paragraph (8), and any leads derived therefrom, shall be admissible for any and all purposes.

(I)     Defendant further agrees that all evidence, except biological evidence as defined in 18 U.S.C. § 3600A, if any, obtained in this investigation and prosecution may be destroyed or returned to its rightful owner 30 days after entry of the judgment or thereafter.

(J)     The United States and Defendant hereby agree that any breach of this agreement by Defendant occasioned by a failure to cooperate, by withholding information, giving of false information, perjury, or failure to testify in any judicial proceeding in connection with the individuals, matters, and transactions referred to in the Information, would: (a) not relieve Defendant of Defendant's plea of guilty; (b) permit the United States to reinstate and proceed with prosecution on any other charges arising from the matters referred to in this Information; (c) permit the United States to instigate and proceed with the prosecution of any other offenses arising from a breach of this agreement, including perjury, false declaration, false statement, and/or obstruction of justice; and (d) permit the United States to utilize against Defendant in any subsequent judicial proceeding any and all statements made by Defendant. If a legitimate issue arises as to whether or not there has been a breach of this agreement, said question shall be determined by the United

States District Court for the Middle District of Georgia. The burden of establishing such a breach shall be upon the United States and shall be established by a preponderance of the evidence. The Federal Rules of Evidence shall not apply in any hearing to establish such a breach, but evidence shall be admitted and excluded at the Court's discretion.

(K)  Defendant understands that the Court has an obligation to determine whether, and in what amount, restitution applies in this case under 18 U.S.C. § 3663 and 18 U.S.C. § 3663A. Defendant agrees that if any restitution is ordered by the Court under 18 U.S.C. §§ 3663, and/or 3363A the amount of restitution ordered by the Court shall include Defendant's total offense conduct. Defendant agrees this may include restitution for all losses caused by the Defendant's criminal conduct, even if such losses resulted from crimes not charged or admitted by Defendant in the factual stipulation. The parties agree that the amount of restitution owed will be determined by the Court at sentencing. The parties agree that the total balance, including interest, of all of the loans issued by Defendant to R.A. and his related straw borrowers as of January 16, 2025, is $3,357,073.21. By this agreement, Defendant is not agreeing that this is the restitution amount, rather, the parties agree that this is the highest amount of restitution possibly due. Defendant retains the ability to argue for a lower amount at sentencing.

Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties or restitution are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, Defendant agrees that it is a minimum schedule of

payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset.

Defendant agrees that the restitution, restitution judgment, payment provisions, and collection actions of this plea agreement are intended to, and will, survive Defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. Defendant further agrees that any restitution collected and/or distributed will survive Defendant, notwithstanding the abatement of any underlying criminal conviction execution of this agreement.

Defendant agrees that Defendant will make no future transfer of assets for the purpose of evading or defeating financial obligations that are created by this agreement or that may be imposed upon Defendant by the Court.

Defendant agrees fully to disclose all assets in which Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Defendant agrees to submit a truthful, complete, and accurate financial statement form provided by the United States Attorney's Office by the earlier of 14 days from Defendant's signature on this plea agreement or the date of Defendant's entry of a guilty plea, sign it under penalty of perjury and provide it to the United States Attorney's Office. Defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances.

The parties will jointly recommend that as a condition of probation or supervised release, Defendant will notify the Financial Litigation Unit (FLU), United States Attorney's Office, of any interest in property obtained, directly or indirectly, including any interest obtained under any other name, or entity, including a trust, partnership, or corporation, after the execution of this plea agreement until the fine or restitution is paid in full. The parties will also jointly recommend that as a condition of probation or supervised release, Defendant will notify the FLU, United States Attorney's Office, before Defendant transfers any interest in property owned directly or indirectly by Defendant, including any interest held or owned under any other name or entity, including trusts, partnerships and/or corporations. Defendant agrees that this obligation will continue in force beyond Defendant's term of supervised release up to the point when Defendant's restitution obligation is fulfilled or otherwise terminates by operation of law.

Defendant expressly authorizes the U.S. Attorney's Office to obtain Defendant's credit report. Defendant agrees to provide waivers, consents or releases requested by the U.S. Attorney's Office to access records to verify the financial information, such releases to be valid for a period extending 90 days from the date of sentencing. Defendant also authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office. Defendant's failure to timely and accurately complete and sign the financial statement, and any update thereto, may, in addition to any other penalty or remedy, constitute Defendant's failure to accept responsibility under U.S.S.G §3E1.1(G).

The restitution described above shall be paid through the Office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

8



(L)     Defendant also agrees that, prior to sentencing, he will enter into a Stipulation and Consent to an Order of Prohibition from Further Participation with the Federal Deposit Insurance Corporation and agrees to waive any rights to a notice and hearing under 12 U.S.C. § 1818(e) of the Federal Deposit Insurance Act and 12 C.F.R. Part 308, Subparts A & B.

(4)

In exchange for the consideration set forth in Paragraph (3) above, the United States agrees as follows:

(A)     The United States will accept the plea of guilty by Defendant as provided in Paragraph (3)(A), above, in full satisfaction of all possible federal criminal charges, known to the Acting United States Attorney at the time of Defendant's guilty plea, which might have been brought against Defendant solely in this district.

(B)     If Defendant cooperates truthfully and completely with the United States, including being debriefed and providing truthful testimony at any proceeding resulting from or related to Defendant's cooperation, then the United States will make the extent of Defendant's cooperation known to the sentencing court. If Defendant is not completely truthful and candid in Defendant's cooperation with the United States, Defendant may be subject to prosecution for perjury, false statements, obstruction of justice, and/or any other applicable charge. If Defendant's cooperation is completed before sentencing, the United States will consider whether such cooperation qualifies as "substantial assistance" pursuant to 18 U.S.C. § 3553(e) and/or U.S.S.G. § 5K1.1 and warrants the filing of a motion at the time of sentencing recommending a downward departure from the applicable guideline range. If Defendant's cooperation is completed after sentencing, the United States will consider whether such cooperation qualifies as "substantial assistance" pursuant to



Federal Rule of Criminal Procedure 35(b) and warrants the filing of a motion for reduction of sentence. In either case, Defendant understands that the determination as to whether Defendant has provided "substantial assistance" rests solely with the United States. Any good faith efforts on the part of Defendant that do not substantially assist in the investigation or prosecution of another person who has committed a crime will not result in either a motion for downward departure or a Rule 35(b) motion. In addition, should Defendant fail to cooperate truthfully and completely with the United States, or if Defendant engages in any additional criminal conduct, Defendant shall not be entitled to consideration pursuant to this paragraph.

(C) Pursuant to U.S.S.G. § 1B1.8, the United States agrees that any self-incriminating information which was previously unknown to the United States and is provided to the United States by Defendant in connection with Defendant's cooperation and as a result of Defendant's plea agreement to cooperate will not be used in determining the applicable guideline range. Further, the United States agrees not to bring additional charges against Defendant, with the exception of charges resulting from or related to a violent felony, as defined in 18 U.S.C. § 924(e)(2)(B), based on any information provided by Defendant in connection with Defendant's cooperation, which information was not known to the United States prior to said cooperation. This does not restrict the United States' use of information previously known or independently obtained for such purposes.

(D) The United States agrees that it will file a motion requesting that Defendant's offense level be reduced by one level under U.S.S.G. § 3E1.1(b) for timely notifying the United States of Defendant's intention to enter a guilty plea, but Defendant understands that whether Defendant is entitled to any offense-level reduction under U.S.S.G. § 3E1.1 is entirely within the Court's discretion. The United States reserves the right to furnish the Court with full and accurate



information and/or argue against the two-level reduction for acceptance of responsibility if Defendant engages or has engaged in conduct inconsistent with accepting responsibility, as defined in U.S.S.G. § 3E1.1 and its commentary.

(5)

Nothing herein limits the sentencing discretion of the Court. The United States and Defendant understand and agree that the Court should consider its sentence in light of the advisory United States Sentencing Guidelines. Defendant therefore agrees that at sentencing the Court may determine any fact pertinent to Defendant's sentence by a preponderance of the evidence and the Court may consider any reliable information, including hearsay. Defendant expressly waives any claim of right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertain to the sentence to be imposed by the Court.

(6)

This agreement constitutes the entire agreement between Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Assistant United States Attorney, concerning any plea to be entered in this case. In particular, Defendant acknowledges and agrees that no one has promised Defendant that the Court will impose any particular sentence or a sentence within any particular range in order to induce this plea. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

Defendant understands that this agreement binds only the Office of the United States Attorney for the Middle District of Georgia, and that the agreement does not bind any other



11

component of the United States Department of Justice, nor does it bind any state or local prosecuting authority, unless expressly stated herein.

(7)

As an aid to this Court, the United States and Defendant, by and through Defendant's attorney, enter into the following Stipulation of Fact. This stipulation is entered into in good faith with all parties understanding that the stipulation is not binding on the Court. Under U.S.S.G. § 6B1.4(d) (Policy Statement), this Court may accept this stipulation as written. The facts set forth below are intended to allow the Court to satisfy its obligation under Federal Rule of Criminal Procedure 11(b)(3) to ensure that an adequate factual basis to support the plea exists. In determining an appropriate guideline range or ultimate sentence, the Court, in its discretion, and consistent with its obligation to determine the facts relevant to sentencing, may consider other information in addition to the facts set forth here.

Subject to the above paragraph, the United States and Defendant stipulate and agree that Defendant is in fact guilty of the offense to which Defendant is pleading guilty, that the following facts are true and correct, and that the United States at trial could prove the following facts beyond a reasonable doubt:

During the periods of March 1, 2018, through August 30, 2022, Defendant served as the Market President for the Gray, Georgia branch of Morris Bank, which is a financial institution as defined by Title 18, United States Code, Section 20, the deposits of which were insured by the FDIC. As Market President, Defendant had lending authority up to $500,000.00 per customer "relationship." A "relationship" included all loans that could be associated with a particular customer. To lend beyond $500,000.00 for any relationship required approval from the Senior Credit Officer for Morris Bank.

Morris Bank policy provided that factors to consider when approving any loan included the borrower's ability to repay the loan, their financial condition, the loan purpose, and collateral. Loan checks for approved loans were issued at the direction of the Loan Officer, such as Defendant. If the loan was for the sale of an item, the loan check would typically be made out to the seller of that item.

R.A. owned and operated R.A. Logging, LLC, which was a timber harvesting business. In or around March of 2018 R.A. obtained his first loan from Morris Bank to purchase equipment. This loan, and all subsequent loans associated with R.A. were handled by Defendant with closing at the Gray, Georgia branch of Morris Bank. R.A. continued to obtain loans from Defendant at Morris Bank. By in or around June 2019, R.A.'s relationship had reached the maximum $500,000.00 threshold that Defendant was allowed to lend to. Thus, Defendant was not allowed to make any additional loans to or for the benefit of R.A. without higher approval.

Around that same time, R.A.'s loans were downgraded to substandard, which meant they displayed a well-defined weakness that could jeopardize collection. Morris Bank policy provided that renewals, modifications, or extensions of loans for relationships above $50,000.00 and graded substandard or worse required approval by the Credit Administration Officer or a member of the credit team.

Evidence and testimony from Morris Bank officials would show that beginning in August of 2019, and continuing through May of 2022, R.A. began having relatives and friends appear as borrowers for loans intended for R.A.'s benefit. Defendant knew that these loans in the other individuals' names were actually for R.A. One of the straw borrowers was R.A.'s wife, T.A. Defendant thus let R.A. exceed his $500,000.00 lending limit without the proper approvals by making it appear these loans belonged to a different relationship. Defendant also did not seek the

required approval for R.A's loans that were graded substandard. R.A. provided the information in these loan applications and Defendant did not verify the reported information for the straw borrowers, to include their income.

On March 23, 2021, the Credit Administrative Officer at Morris Bank emailed Defendant to inquire about whether the R.A. relationship was over $500,000.00 and would require an approval form. On March 25, 2021, the Credit Administrative Officer at Morris Bank emailed Defendant about the loans she found that were tied to R.A.'s relationship. The loans she had identified totaled $1,620,120.03. The list she calculated did not include all of the loans that were actually related to R.A's relationship. According to the Credit Administrative Officer, Defendant told her that the loans were not all related because they had their own repayment sources and should therefore not be considered the same relationship.

Despite R.A's loans being delinquent on payment, on or about June 18, 2021, Defendant approved a $171,589.00 loan to D.R. to purchase a 2018 535 D Cat Skidder. The bill of sale included in this loan application showed that the person buying the Skidder was actually R.A. This Skidder was never sold by the alleged seller.

In or around December 2021, officials at Morris Bank stated they became aware that several loans in R.A's and his relatives' names were related and that they had surpassed Defendant's lending limit. The loans also continued to suffer delinquency issues. Despite these issues, Defendant continued to approve loans to R.A. through straw borrowers. Had Defendant sought the approval for these loans under R.A's relationship, the request would have been denied given the delinquency issues. For example, on or about January 13, 2022, Defendant approved two loans in the name of R.M., one for $114,000.00 and one for $297,500.00. Both of these loans were actually for R.A's benefit. Also, on May 24, 2022, Defendant approved a $131,595.00 loan

for A.M., which was actually for R.A's benefit. On June 10, 2022, Defendant approved a $285,000.00 loan for A.M., which was actually for R.A.'s benefit.

As a result of the conspiracy, Morris Bank issued a total of 57 loans to and for the benefit of R.A., totaling over $3,000,000.00. Defendant now admits and agrees that between March 1, 2018, and August 30, 2022, he conspired with R.A., T.A., and others, both known and unknown, to carry out a scheme to defraud Morris Bank, a federally insured financial institution.

(8)

## ACCEPTANCE OF PLEA AGREEMENT

Defendant understands and has fully discussed with Defendant's attorney that this agreement shall become effective only upon the Court's acceptance of this agreement and the Court's acceptance of the plea of guilty by Defendant.

SO AGREED, this 16th day of April, 2025.

C. SHANELLE BOOKER
ACTING UNITED STATES ATTORNEY

BY: _____
ELIZABETH S. HOWARD
ASSISTANT UNITED STATES ATTORNEY

I, Alan Childs, have read this agreement and had this agreement read to me by my attorney, William H. Thomas Jr. I have discussed this agreement with my attorney and I fully understand it and agree to its terms. Defendant acknowledges that Defendant authorized and consented to the negotiations between the United States and the attorney for Defendant that led to this agreement.

_____
ALAN CHILDS
DEFENDANT

I, William H. Thomas Jr., attorney for Defendant Alan Childs, have explained the Information and the United States' evidence received through discovery and my investigation of the charge to Defendant. I believe Defendant understands the charge against Defendant and the evidence that would be presented against Defendant at a trial. I have read this agreement, have been given a copy of it for my file, and have explained it to Defendant. To the best of my knowledge and belief, Defendant understands this agreement.

_____
WILLIAM H. THOMAS JR.
ATTORNEY FOR DEFENDANT